IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
3:11-cv-584-GCM-DSC

| | |
|---|---|
| OUTDOOR LIGHTING PERSPECTIVES FRANCHISING, INC., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) ORDER |
| OLP-PITTSBURGH, INC., DAVID PERLMUTTER, AMY PERLMUTTER AND OUTDOOR LIVING PITTSBURGH, LLC, | ) ) ) ) ) ) |
| Defendants. | ) ) ) |

This matter came before the Court on April 11, 2012 on Plaintiff Outdoor Lighting Perspectives Franchising, Inc.'s ("OLP") Motion for Preliminary Injunction to enjoin Defendants' violation of a covenant not to compete in a franchise agreement between the parties. The matter has been fully briefed by both parties and the Court heard oral argument from Counsel. For the reasons set forth below, the Court will grant OLP's Motion for a Preliminary Injunction and enjoin the Defendants' continued breach of their covenant not to compete.

**I. FACTS**

OLP is a franchisor of outdoor lighting businesses under the trademark "Outdoor Lighting Perspectives®." OLP-Pittsburgh, Inc. ("OLP-Pitt") is a Pennsylvania corporation owned by David Perlmutter. Amy Perlmutter is a stockholder and was (or is) the Corporate Secretary of OLP-Pitt from 2007 through July 1, 2011. *See* Docket No. 30-1, Ex. A, Gray Declaration at p. 9; *see also* Docket No. 28, Ex. C, Supp. Decl. Schroeder. Outdoor Living Pittsburgh, LLC ("Outdoor Living Pitt") is a Pennsylvania corporation formed by Amy or David

Perlmutter on July 5, 2011. Outdoor Living Pitt is owned by a trust and Amy Perlmutter is a beneficiary of the trust that owns Outdoor Living Pitt.

OLP and OLP-Pitt entered into an OLP Franchise Agreement in January 2007. OLP-Pitt and the Perlmutters operated an OLP franchise business in a territory encompassing five counties in the State of Pennsylvania: Allegheny, Beaver, Butler, Westmoreland and Washington. The Defendants' Franchise Agreement was terminated on October 20, 2011.

The noncompete provision in the Franchise Agreement states as follows:

> 14.2 The Franchisee covenants and agrees that: (f) upon termination or expiration of the Term or any renewal Terms, or the transfer, sale or assignment of this Agreement by the Franchisee neither the Franchisee, the operating manager or the Franchisee's owners will have any direct or indirect interest (i.e. through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent, for 2 years, in any Competitive Business within 100 miles of the Territory or any other franchisee's territory.

(Docket No. 40, Ex. A Franchise Agreement at ¶ 14.2(f).)

"Competitive Business" is defined as "...any business operating in competition with an outdoor lighting business or any business similar to the Business" ("Competitive Business"). *Id*. at ¶ 14.2(e). "Business" is defined as "the business operations conducted or to be conducted by the Franchisee consisting of outdoor lighting design and installation services, using the Franchisor's System and in association therewith the Marks." *Id*. at "Definitions" (c).

The Franchise Agreement also extends to officers and stockholders of a Franchisee:

> 14.8 In the event that the Franchisee is not an individual, this Section 14 [noncompete] will also apply to the officers, directors, stockholders, partners, members, trustees, beneficiaries and/or principals of the Franchisee, the Franchisee, and any persons controlled by, controlling or under common control of the Franchisee.
> *Id*. at ¶ 14.8.

OLP-Pitt also signed a separate Non-disclosure and Non-competition Agreement as Exhibit J to the Franchise Agreement. (Docket No. 40-4 at 14-20.) The Non-disclosure and Non-competition Agreement identifies the subject of the two-year, 100-mile noncompete

prohibition as "Associate." Under the terms of the Non-disclosure and Non-Competition Agreement, "Associate" is defined as OLP-Pitt and its "managers, officers, beneficial owners, directors, employees, partners, members, principals and immediate family members. *Id*. at ¶ 1 and ¶ 6.

## II.  ANALYSIS

### A.  The Standard for Granting a Preliminary Injunction

Following the Supreme Court's preliminary injunction standard set forth in *Winter v. Natural Resources Defense Council, Inc.*, 129 S.Ct. 365 (2008), the Fourth Circuit held that a preliminary injunction will issue if the plaintiff establishes "'(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009) (quoting *Winter*, 129 S.Ct. at 374).

### B.  OLP is Likely to Succeed on the Merits

Under North Carolina law[1], a covenant not to compete is valid and enforceable if the covenant is (1) reasonably necessary for the protection of the convenantee's legitimate business interest; (2) reasonable as to time and territory; and (3) not interfering with the public interest. *Meineke Car Care Centers, Inc. v. Bica*, 2011 U.S. Dist. LEXIS 118171 (W.D.N.C. 2011); *Lockhart v. Home-Grown Industries of Georgia, Inc., d/b/a Mellow Mushroom*, 2007 U.S. Dist. LEXIS 67256 (W.D.N.C. 2007), *citing Kennedy v. Kennedy*, 584 S.E.2d 328, 333 (N.C. Ct. App. 2003); *see also*, *Baskin-Robbins v. Golde*, 2000 U.S. Dist. LEXIS 22861 (E.D.N.C. 2000).

Here, enforcement of the covenant not to compete is necessary to protect OLP's

---

[1] The Franchise Agreement contains a Choice of Law provision requiring the application of North Carolina law.

legitimate business interest. OLP invested substantial time, money, and other resources in developing its unique Business System in association with its trademarks and trade names. For the past five years, the Perlmutters used the "Outdoor Lighting Perspectives®" Mark and OLP Business System to establish customer goodwill in the Pittsburgh market. This Court recognized the need to protect a franchisor's goodwill and other business interests in *Meineke Car Care Centers v. Bica*. As this Court noted:

> Here, enforcement of the covenant not to compete is necessary to protect the legitimate business interests of Meineke. Meineke has expended substantial resources developing its processes, manuals, advertising materials, etc. and on building goodwill and obtaining a national reputation as a provider of automotive services. By signing the Franchise Agreement, Defendants recognized and took advantage of the value of the confidential and proprietary information Meineke gave them. During the term of their agreement with Meineke, Defendants received training, assistance, and a protected territory in which to build a successful automotive business. If the Court allows Defendants to continue operating their store in violation of the covenant not to compete, Defendants will be able to use the confidential and proprietary information they acquired from Meineke to take business away from it.

*Meineke Car Care Centers, Inc. v. Bica*, 2011 U.S. Dist. LEXIS 118171 at *12 (W.D.N.C. 2011).

A franchisor's goodwill and reputation would be damaged if a terminated franchise continued to operate a directly-competitive business in the same location (or market) under a different name. *Id* at *14. Absent enforcement of the covenant, OLP will be unable to re-enter the market serviced by the Perlmutters' former OLP franchise and will, accordingly, lose the sales, goodwill and market presence it enjoyed in those areas for over five years. It will be very difficult for OLP to place a new franchise in the Perlmutters' former territory while the Defendants continue to operate "Outdoor Living Pittsburgh," a competing business in the same territory. *See Mellow Mushroom* at *15 (franchisor's difficulty in re-entering the market serviced by its former franchisee and difficulty in attracting new franchisees to the area as forms of irreparable harm justifying injunctive relief).

OLP also has a legitimate interest in preserving the integrity of its franchise system. If its noncompete provisions are not enforced, then the entire OLP franchise system is placed in jeopardy as franchisees may ignore their agreements and begin operating as a competing business knowing that the noncompete provisions may be disregarded and will provide no protection to other franchisees. *See Meineke Car Care Centers* at \*15 ("... if Defendants were permitted to continue violating the noncompete agreement, it would undermine the value of all the noncompete agreements Meineke has with other franchisees."); *see also Mellow Mushroom* at \*16 (damage to its relationship with other franchisees caused by violation of the noncompete agreement is "clearly irreparable.").

With respect to the reasonableness of the covenant not to compete, the covenant runs for a two year term. That two year term is within the range that the North Carolina courts deem reasonable. *See Mellow Mushroom* (two-year noncompete enforced); *Jewel Box Stores Corp. v. Marrow*, 272 N.C. 659, 663, 158 S.E.2d 840, 843 (1968) (enforcing ten year covenant); *Keith v. Day*, 81 N.C. App. 185, 194, 343 S.E.2d 562, 568 (1986) (two year covenant reasonable).

With respect to the geographic scope, the Court finds that the 100-mile buffer around the franchisee's territory is not necessary to protect OLP's legitimate business interests under the facts of this case. The Court has the power to "blue pencil" the noncompete agreement by striking distinctly separable parts of the covenant in order to render the remainder of the noncompete provision reasonable. *ACS Partners, LLC v. American Group, Inc.,* 2010 U.S. Dist. LEXIS 19907 at \*17 (W.D.N.C. 2010); *Welcome Wagon Int'l, Inc. v. Pender*, 255 N.C. 244, 120 S.E.2d 739, 742 (1961). In this case, the terms of the noncompete provision are severable and the Franchise Agreement specifically states that the Court "may modify Section 14.2 to the extent it deems necessary to make such a provision enforceable under applicable law." (Docket

No. 40, Franchise Agreement at ¶ 14.5).

Based on this authority, the Court hereby blue pencils the words "100 miles of" in paragraph 14.2 so that it reads as follows:

> The Franchisee covenants and agrees that: (f) Upon termination or expiration of the Term or any renewal Terms, or the transfer, sale or assignment of this Agreement by the Franchisee neither the Franchisee, the operation manager or the Franchisee's owners will have any direct or indirect interest (i.e., through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent, for 2 years, in any Competitive Business within ~~100 miles of~~ the Territory or any other franchisee's territory.

As blue penciled, the noncompete provision protects OLP's legitimate business interests by restricting the Defendants' activities within their territory and the territories of other operating OLP franchisees. Preventing former franchisees from operating within other franchisee's territories is reasonable. *Mellow Mushroom* at *21, *citing Manpower of Guilford County, Inc. v. Hedgecock*, 42 N.C. App. 515, 523, 257 S.E.2d 109, 115 (1979) (the franchisor has a legitimate right to prohibit its franchisees from competing with it or its affiliates throughout the country); *Meineke Car Care Centers* at *17 (enforcing restriction within six miles of any other Meineke Car Care Center).

Finally, the public interest is served by the issuance of the preliminary injunction enforcing a valid noncompete agreement. *Meineke Car Care Centers* at *15-16 (granting preliminary injunction is in the public interest to prevent consumer confusion and prevent unfair competition); *Mellow Mushroom* at *22; *I Can't Believe It's Yogurt*, 1997 WL 599391 at *20 ("There is a public interest in the enforcement of a valid covenant not to compete, particularly in the franchisee context").

**C.  OLP Will Suffer Irreparable Harm Absent Injunctive Relief**

If Defendants' conduct is not enjoined, OLP will suffer irreparable harm to its goodwill, its franchise system, and its relationship with other OLP franchisees. The Perlmutters were

given access to OLP's Mark and proprietary Business System and the know-how which OLP developed over many years. If Defendants are allowed to use these advantages as a competitor, OLP will continue to lose both existing and potential new customers. Furthermore, Defendants' actions will continue to hinder OLP's ability to re-enter the market and could, if not enjoined, threaten the OLP system. This Court has recognized the threat of irreparable harm under these circumstances:

> Second, Meineke has made a clear showing that it will likely suffer actual, imminent, and irreparable harm. Meineke's goodwill and reputation with consumers will be damaged if Defendants continue to violate the covenant not to compete and to use Meineke's proprietary information. Additionally, Meineke will also be harmed if Defendants use the knowledge, manner and training obtained through the former Franchise Agreement relationship to gain customers within the restricted area... Furthermore, if Defendants were permitted to continue violating the non-compete agreement, it would undermine the value of all of the non-compete agreements Meineke has with other franchisees.

*Meineke Car Care Centers* at *14-15.

### D. The Balance of Equities Favors OLP

The balance of equities tips in OLP's favor because the damage that would result if Defendants were allowed to continue to violate the terms of the noncompete agreement outweighs the harm to Defendants from enforcement of the covenant. There is no question that the noncompete restrictions contained in the Franchise Agreement will burden Defendants. However, any hardship suffered by Defendants is a direct result of the Perlmutters' decision to default on the franchise agreement, to abandon the Outdoor Lighting Perspectives® franchise business, and to violate the post-termination provisions to which the Perlmutters agreed.

> Defendants specifically agreed to abide by the covenant when they signed the Franchise Agreement with Meineke. Thus any harm they suffer is a consequence of their failure to abide by the Franchise Agreement.

*Meineke Car Care Centers* at *15. Thus, the balance of equities favors OLP.

### E. All Named Defendants Are Enjoined from Competing

While it is true that the Franchise Agreement is between OLP and OLP-Pitt, David


Perlmutter signed both the Franchise Agreement and a "Guaranty and Assumption of Franchisee's Obligations" in which he agreed "to be personally bound by, and personally liable for the breach of, each and every provision in the Agreement, including but not limited to the terms of Section 14." (Docket No. 40, Ex. A, Attachment B). Section 14 of the Franchise Agreement contains the noncompete provision.

David Perlmutter also signed a separate Non-disclosure and Non-competition Agreement that binds an "Associate", defined as OLP-Pitt and its "managers, officers, beneficial owners, directors, employees, partners, members, principals and immediate family members", to the two-year noncompete prohibition. (Docket No. 40-4 at 14-20). Amy Perlmutter, wife and "immediate family member" of David Perlmutter, is bound by the terms of the Non-disclosure and Non-competition agreement. Additionally, Amy Perlmutter served as Secretary of OLP-Pitt and she was a shareholder, and therefore she is bound to the terms of the Franchise Agreement which extends to officers and stockholders. (Docket No. 40, Exhibit A Franchise Agreement at ¶ 14.8).

As for "Outdoor Living Pittsburgh," the Perlmutters may not do indirectly through Outdoor Living Pittsburgh what they cannot do directly. Rule 65 of the Federal Rules of Civil Procedure specifies the scope of every injunction, which includes: (A) the parties; (B) the parties' officers, agents, servants, employees and attorneys; and (C) other persons who are in active concert or in participation with anyone described in Rule 65(d)(2)(A) or (B). Fed. R. Civ. P. 65(d)(2). Outdoor Living Pittsburgh is acting in concert and participation with OLP-Pitt and/or David Perlmutter and/or Amy Perlmutter, and must be enjoined.

The injunction shall run for a period of twenty four months from April 11, 2012 in order to give OLP the benefit of the full time period required the parties' contract. (Docket No. 40,

Ex. A Franchise Agreement at ¶ 14.2) ("If any person restricted by this Section 14 refuses to voluntarily comply with the foregoing obligations, the 2 year period will commence with the entry of any order of a court... enforcing this Section 14.") This will also prevent a windfall to the Defendants who have been operating in violation of the covenant not to compete while OLP has attempted to enforce it through the judicial process. *Meineke Car Care Centers* at *16; *Baskin-Robbins* at *21.

## F.  David Perlmutter's Bankruptcy Does Not "Void" the Franchise Agreement Signed by OLP-Pitt

It is true that the declaration of bankruptcy permits a bankruptcy trustee to reject any executory contract of the debtor. *CPC Health Corp. v. Goldstein (In re CPC Health Corp.)*, 81 Fed. Appx. 805, 806-807 (4th Cir. 2003).  However, contrary to Defendants' assertion, the Franchise Agreement at issue here is not rendered void merely by virtue of David Perlmutter's July 2011 Chapter 7 bankruptcy filing.  OLP-Pitt, the franchisee identified in the OLP Franchise Agreement did not file bankruptcy.  David Perlmutter did not list the Franchise Agreement as an asset or executory contract on his Bankruptcy Schedules.  (Docket No. 30, Declaration of Michael R. Gray, Exhibit A).  Furthermore, the Franchise Agreement was not assumed or rejected by the Trustee in Mr. Perlmutter's bankruptcy.

Even if the Court assumes that the OLP Franchise Agreement was an executory contract and part of Mr. Perlmutter's bankruptcy estate, the Trustee had 60 days to assume or reject the Franchise Agreement or it was deemed rejected under 11 U.S.C. § 365(d)(1).  This rejection is automatic and constitutes a breach of the Franchise Agreement the day before the bankruptcy filing. 11 U.S.C. § 365(g)(1).  Rejection of the executory contract constitutes a pre-petition breach of the contract leaving OLP as a creditor in the bankruptcy case with all "claims" that

flow from the contract's breach prior to the bankruptcy filing. 11 U.S.C. 101(5). All "claims" giving rise to a right to payment are dischargeable under 11 U.S.C. § 727. However, claims not giving rise to payment, such as equitable causes of action, are not discharged. *Young v. Young*, 2007 U.S. Dist. LEXIS 14698 (M.D.N.C. 2007) (the term "claim" excludes equitable causes of action where the only remedy sought by and acceptable to a plaintiff is non-monetary relief).

There are simply no facts before the Court to show that David Perlmutter's bankruptcy filing rendered the Franchise Agreement "void" and enforcement of the noncompete agreement does not involve a claim giving rise to payment subject to discharge under 11 U.S.C. § 727(a).

## III. CONCLUSION

Based upon the foregoing, IT IS HEREBY ORDERED:

1. Defendants, their directors, officers, agents, servants, employees and attorneys, and all others in active concert or participation with them, are enjoined from having any direct or indirect interest (i.e., through a relative) as a disclosed or beneficial owner, investor, partner, director, officer, employee, consultant, representative or agent in any business providing outdoor lighting design and installation services within the Counties of Allegheny, Beaver, Butler, Westmoreland, and Washington in the State of Pennsylvania, or within any other existing OLP franchisee's territory, for a period of 24 months from April 11, 2012;

2. Defendants shall file and serve Affidavits in this action within 14 days of the date of this Order specifying in detail the actions taken by Defendants to comply with this Injunction Order; and

3. No bond is required pursuant to Section 14.7 of the contract between the parties.

IT IS SO ORDERED.

Signed: April 17, 2012

*[signature]*

Graham C. Mullen
United States District Judge